**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **CASE NO. 2:20-CR-139(2)** |
| **vs.** | **JUDGE SARAH D. MORRISON** |
| **JAMIL JAMAL ABDALLA (2),** | |
| **Defendant.** | |

### SENTENCING MEMORANDUM OF THE UNITED STATES

The United States submits its Sentencing Memorandum regarding defendant Jamil Jamal Abdalla, whose sentencing is set for September 1, 2021, at 1:30 p.m. For the reasons below, the United States recommends that the Court impose a term of incarceration of 60 months, which is the statutory maximum but is 18 months below the bottom of the properly calculated Guidelines range, followed by three years of supervised release.

### I. BACKGROUND

In early 2019, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began an investigation into possible cross-border firearms trafficking from Ohio into Canada. On August 19, 2020, following an extensive investigation, a federal Grand Jury in this District returned an Indictment charging eleven defendants, including Defendant Abdalla, in Count 1 with Conspiracy to Illegally Traffic Firearms, in violation of 18 U.S.C. § 371. (*See United States v. O. Hassan*, et al., S.D. Ohio No. 2:20-cr-139, ECF No. 3, ¶ 1.) And on November 19, 2020, a federal Grand Jury in the Southern District of Ohio returned an Indictment charging another defendant, Abdulwahab Sharif Mohamed Hassan, aka China, in Count 1 with Conspiracy to

Illegally Traffic Firearms, in violation of 18 U.S.C. § 371, and in Counts 2 and 3 with violations of the federal straw purchase law, 18 U.S.C. § 922(a)(6).

On December 13, 2020, the Court joined these two cases. Together, both Indictments lay out a detailed conspiracy to obtain and stockpile firearms in the Southern District of Ohio for the purpose of illegally transferring them and selling them in Canada. As the Indictments explain, the co-conspirators obtained the firearms through both legal and illegal means, stockpiled them, packed them into a void in the front compartment of Toyota Camrys, recruited female drivers to shepherd the Camrys into Canada, followed the drivers into Canada, and then arranged for the sale of the firearms in Canada. On December 18, 2020, the defendant pled guilty to Count 1 (conspiracy to traffic the firearms, 18 U.S.C. § 371).

## II. GUIDELINES RANGE/PRESENTENCE INVESTIGATION REPORT

The Probation Officer issued a final Presentence Report (PSR) on February 29, 2021. According to the PSR, the total offense level (TOL) is 32, which included the following:

- Base offense level: 18 (U.S.S.G. § 2K2.1(a)(5));
- Number-of-firearms enhancement: +6 (U.S.S.G. § 2K2.1(b)(1));
- Firearms trafficking: +4 (U.S.S.G. § 2K2.1(b)(5));
- Firearms left the U.S.: +4 (U.S.S.G. § 2K2.1(b)(6)(A));
- Leadership enhancement: +3 (U.S.S.G. § 3B1.1(b)); and
- Less 3 points for acceptance of responsibility (U.S.S.G. § 3E1.1(b)).

The PSR further calculated the defendant's Criminal History (CH) Category as a III, with a resulting range of 151-188 months, which is statutorily restricted to 60 months. (PSR ¶ 112.) The Probation Officer did not identify any factors warranting departure from the guidelines range, though he did note some facts that may warrant a variance. (*Id.* ¶¶ 123–26.)

At this point, the defendant has one remaining objection to the PSR. The Government joins that objection. The PSR assessed the defendant with a base offense level of 18 because a number

of the guns seized as part of the conspiracy were equipped with Glock conversion switches; these conversion switches make an otherwise semiautomatic handgun into an automatic handgun. (*See, e.g.*, PSR ¶¶ 60-61.) The PSR accurately lays out the facts at play in this case. Nevertheless, the Government agrees that the base offense level should be a 12. The parties agreed in the context of the plea agreement that the base offense level for Mr. Abdalla is a 12 in this case, and the Government intends to honor that agreement. The Government further submits that it has made the same contention with respect to the other defendants in this matter who have the same degree of culpability in the conspiracy as Mr. Abdalla. Therefore, in the interest of fairness and in honor of the parties' agreement on this front, the Government objects to the PSR's base offense level of 18, and submits that 12 is the more proper base offense level with respect to Mr. Abdalla.

If the Court agrees with the parties, the defendant's total offense level comes out to a 26. With a CH of III, this would net an advisory Guidelines range of 78-97 months.

### III.   ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

Sentencing requires a determination of the applicable guideline range, whether a departure is appropriate, and a consideration of the factors in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). Under this analysis, the Government submits for the following reasons that a term of incarceration of 60 months, and a term of supervised release of three years, is fair.

### A. Nature and Circumstances: Transnational Gun Trafficking Is a Serious Crime that Puts Lives in Danger

A single straw purchase or illegal transfer of a firearm is "a callous and extreme risk to public safety." *United States v. Daniells*, No. 15-10150, 2017 WL 2256988, at *4 (D. Mass. May 23, 2017). Putting guns in the hands of people who shouldn't have them is a dangerous act. It skirts the regulatory framework in place to track and monitor the sale and re-sale of dangerous

guns. *See United States v. Arzu*, No. 5:07 CR 166, 2007 WL 2713908, at *3 (N.D. Ohio Sept. 17, 2007) (noting that "[t]he access to firearms through illegal channels is a problem for law enforcement of immense p[ro]portions," which, in part, justifies "a sentence at the highest level of the advisory Guidelines range"). And it entails a fundamental lack of care about what happens with the guns afterwards—or to the people they hurt or even kill.

The circumstances of this case are aggravated beyond a run-of-the-mill straw purchase. The conspiracy involved a large number of guns that were transferred to people who shouldn't have them; this amplifies the potential danger of an illegal firearms transfer. *See United States v. Elsaddique*, 252 F. App'x 992, 993 (11th Cir. 2007) ("[The defendant] used a false name to purchase three firearms. The act alone creates a significant danger to the public, which is only increased by the possibility that he made the purchase on someone else's behalf—someone who may have had a more serious and more recent criminal history."). This case also involves the transnational bulk transfer of firearms. When guns from America illegally flood into Canada, our country's issues with gun violence get passed onto a neighboring country that desperately does not want them. In the course of this case, the investigation further revealed that the mark-up for illegally purchased firearms often comes to between five and 25 times the retail value of the guns in the States. This represents a lucrative, difficult-to-track black market that is now creating dangers for Canadian citizens and law enforcement. Canadian authorities also made clear that the illegal proliferation of guns into their country was an ever-growing problem that they were working furiously to stem. Ohio, in fact, has become a priority for them, as the authorities in Canada indicated that Ohio is the number one source state for firearms recovered in crimes in Canada.

The Government respectfully submits that a sentence of 60 months' incarceration is appropriate given the serious nature of the conduct at issue and the aggravating factors present.

**B. History and Characteristics: The Court Should Take into Account the Defendant's Extensive Criminal History and the Circumstances of his Arrest**

The Government submits that the defendant's extensive criminal history shows that a sentence of 60 months is warranted in this case. Although he is young, the defendant has been committing crimes his entire adult life. Already, he has earned convictions for attempted improper handling of a firearm (2017- age 18- sentenced to 1 year community control), attempt to commit an offense (2017- age 18- sentenced to 90 days in jail, suspended, and 2 years of non-reporting community control), driving under suspension (2018- age 19- sentenced to 30 days in jail, suspended), disorderly conduct (2018- age 19- sentence was a fine and costs), and two counts of breaking and entering (2019- age 19- sentenced to 4 years community control). In addition, his "minor convictions" include numerous offenses for driving under suspension or financial responsibility and he has one convictionfor hit / skip leave scene. The defendant was involved in the instant offense since at least July 2018 (age 19) through mid-2019 (age 20). And, notably, the defendant was under a criminal justice sentence for the attempted improper handling of firearm, attempt to commit an offense, and breaking and entering convictions at the time of the instant offense. The sheer number of convictions and law enforcement interactions this defendant has had during his short adult life is truly remarkable.

The facts of two of these prior convictions warrant further discussion because they involve the same drug, Promethazine Codeine, which is a highly abused drug. First, as to the disorderly conduct conviction, the defendant was found to be in possession of 269.75 grams (9.5 ounces) of Promethazine Codeine. (PSR ¶ 83.) Second, as to the breaking and entering conviction, the

defendant was found to have broken into a Refill Pharmacy through a smashed window.  In fact, it was determined that the defendant broke into Gateway Health and Wellness Center and then into the pharmacy through a common wall between the two establishments.  In total, 209.75 grams (7.3 ounces) of Promethazine Codeine was stolen from the pharmacy and two laptops were taken from the Wellness Center.  (PSR ¶ 86.)

The Promethazine Codeine from these two prior convictions is relevant.  Promethazine Codeine is a prescription-grade cough syrup and it is known to be abused by drug users.  It is oftentimes referred to as "Lean" on the streets.  Lean sells on the street in "line"-level, which is slang for an ounce, quantities.  A line of Lean on the street goes anywhere from $700 to $1,300.  So, from these two incidents, the defendant had between $6,650 to $12,350 and $5,110 to $9,490 worth of Promethazine Codeine in his possession on these dates, respectively.  Or, in total, he had between $11,760 to $21,840 worth of Promethazine Codeine in his possession from these two incidents.

Finally, the circumstances of the defendant's arrest do him no favors.  On September 2, 2020, the defendant was arrested at his residence, along with two of his codefendants.  During a search associated with the arrest, law enforcement found, among other items, narcotics, three firearms, ammunition (including an extended magazine), and a card reader / scanner.  (*See, e.g.*, Ex. 1.)  One of those guns was a Glock (*see* Ex. 1) that was reported stolen in the early part of 2020.  (*See* Ex. 2.)  Another was a Draco AK-47 pistol (*see* Ex. 1), which had been reported as stolen in February of 2020 (*see* Ex. 3); however, a few days prior, a video was posted on social media wherein one of the codefendants can be seen in possession of the Draco.

6

The defendant's criminal history and the circumstances of his arrest show this offense was not some aberrant event, a mere one-time misjudgment, but instead, it shows the instant offense is part of what this defendant's adult life has been about and what he strives to be. His criminal history has only escalated over time, to the point that he became a leader in a transnational firearms trafficking conspiracy by the age of 19. Despite repeated interactions with the criminal justice system, the defendant's behavior indicates that he has not yet been deterred from future criminal activity. Now is the time to send the defendant a message: enough is enough. Through the defendant's sentence, the Court should show the defendant it will not tolerate him endangering people and wreaking havoc both in this District and abroad.

**C. Unwarranted Sentencing Disparities: The Defendant Was One of the Primary Leaders of the Conspiracy**

This is a large transnational firearms-trafficking crime, with guns that ended up in the hands of serious criminals in Canada. This case involved a large number of firearms. This defendant was an integral part of the conspiracy. As with all conspiracies, the success of the conspiracy is reliant on the conspiracy members doing their parts, and the defendant's involvement in this conspiracy was extensive. As provided in the PSR, the "defendant participated in a firearms trafficking conspiracy by renting vehicles for the purpose of loading firearms into a void to avoid detection at the United States and Canadian border in order to sell the firearms in Canada for profit. Additionally, Abdalla traveled to Canada on two occasions to assist in the facilitation of the firearms transfer, directed the activities of five or more participants, and assisted in the discipline of other members of the conspiracy." (*See* PSR ¶ 53.)

In this case, the Government assesses the defendants to fall into two tiers of culpability— an upper tier and a lower tier. The Government views the defendant as falling near the top of the

upper tier.  He was a leader in this conspiracy and his involvement was integral the conspiracy's success.  The defendant's sentence should reflect the seriousness of the offense and the seriousness of the defendant's role in it.

Finally, it should be noted that the defendant's Guidelines range is 78-97 months.  By giving him a sentence of 60 months, which is the statutory maximum, he is effectively getting more than a 20% reduction off the bottom of his Guidelines range when he has not earned any reduction.  Given the defendant's criminal history, his role in this offense, and the reduction he is receiving based on the statutory maximum, a sentence of 60 months is warranted in this case.

### IV.    <u>CONCLUSION</u>

For these reasons, the Government submits that a term of incarceration of 60 months, and a term of supervised release of three years, would be sufficient but not greater than necessary to further the ends of sentencing.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney

*s/Kelly A. Norris*
KELLY A. NORRIS (0081254)
S. COURTER SHIMEALL (0090514)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 469-5715
Fax: (614) 469-5653
E-mail: Kelly.Norris@usdoj.gov
E-mail: Courter.Shimeall@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum of the United States was served this 24th day of August, 2021, electronically upon all counsel of record for Defendant Jamil Jamal Abdalla.

*s/Kelly A. Norris*
KELLY A. NORRIS (0081254)
Assistant United States Attorney
