**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **CASE NO. 2:20-CR-139(7)** |
| **vs.** | |
| **AHMED AHMED,** **aka Seven,** | **JUDGE SARAH D. MORRISON** |
| **Defendant.** | |

### SENTENCING MEMORANDUM OF THE UNITED STATES

The United States submits its Sentencing Memorandum regarding defendant Ahmed Ahmed, aka Seven, whose sentencing is set for September 3, 2021, at 3:00 p.m. For the reasons below, the United States recommends that the Court impose a term of incarceration at or below the bottom of the properly calculated Guidelines range.

### I.    BACKGROUND

In early 2019, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began an investigation into possible cross-border firearms trafficking from Ohio into Canada. On August 19, 2020, following an extensive investigation, a federal Grand Jury in this District returned an Indictment charging eleven defendants, including Defendant Ahmed, in Count One with Conspiracy to Illegally Traffic Firearms, in violation of 18 U.S.C. § 371. (*See United States v. O. Hassan*, et al., S.D. Ohio No. 2:20-cr-139, ECF No. 3, ¶ 1.) And on November 19, 2020, a federal Grand Jury in the Southern District of Ohio returned an Indictment charging another defendant, Abdulwahab Sharif Mohamed Hassan, aka China, in Count 1 with Conspiracy

to Illegally Traffic Firearms, in violation of 18 U.S.C. § 371, and in Counts 2 and 3 with violations of the federal straw purchase law, 18 U.S.C. § 922(a)(6).

On December 13, 2020, the Court joined these two cases. Together, both Indictments lay out a detailed conspiracy to obtain and stockpile firearms in the Southern District of Ohio for the purpose of illegally transferring them and selling them in Canada. As the indictments explain, the co-conspirators obtained the firearms through both legal and illegal means, stockpiled them, packed them into a void in the front compartment of Toyota Camrys, recruited female drivers to shepherd the Camrys into Canada, followed the drivers into Canada, and then arranged for the sale of the firearms in Canada. On January 15, 2021, the defendant pled guilty to Count 1 (conspiracy to traffic the firearms, 18 U.S.C. § 371).

## II.     <u>GUIDELINES RANGE/PRESENTENCE INVESTIGATION REPORT</u>

The Probation Officer issued a final Presentence Report (PSR) on April 13, 2021. According to the PSR, the total offense level (TOL) is 29, which included the following:

- Base offense level: 18 (U.S.S.G. § 2K2.1(a)(5));
- Number-of-firearms enhancement: +6 (U.S.S.G. § 2K2.1(b)(1));
- Firearms trafficking: +4 (U.S.S.G. § 2K2.1(b)(5));
- Firearms left the U.S.: +4 (U.S.S.G. § 2K2.1(b)(6)(A)); and
- Less 3 points for acceptance of responsibility (U.S.S.G. § 3E1.1(b)).

The PSR further calculated the defendant's Criminal History (CH) Category as a I, with a resulting range of 87-108 months, which is statutorily restricted to 60 months. (PSR ¶ 102.) The Probation Officer did not identify any factors warranting departure from the guidelines range, though he did note some facts that may warrant a variance. (*Id.* ¶¶ 113-15.)

At this point, the defendant has one remaining objection to the PSR. The Government joins that objection. The PSR assessed the defendant with a base offense level of 18 because a number of the guns seized as part of the conspiracy were equipped with Glock conversion switches; these

conversion switches make an otherwise semiautomatic handgun into an automatic handgun. (*See, e.g.*, PSR ¶¶ 60-61.) The PSR accurately lays out the facts at play in this case. Nevertheless, the Government agrees that the base offense level should be a 12. The parties did not contemplate a base offense level of 18 during the negotiation and resolution of the plea agreement. Moreover, any discovery underpinning the facts that could be used to support a base offense level of 18 was not part of the initial rounds of discovery in this case; and the discovery that drove the parties' plea discussions and ultimate resolution of this case did not include information about Glock switches. Finally, the Government has agreed with all other objections on this issue in the context of the PSRs of the defendant's co-defendants. It would be unjust to proceed differently in this instance. For these reasons, the Government joins the defendant's objection regarding the base offense level.

If the Court agrees with the parties, the defendant's total offense level comes out to a 23. With a CH of I, this would net an advisory Guidelines range of 46-57 months.

## III.     ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

Sentencing requires a determination of the applicable guideline range, whether a departure is appropriate, and a consideration of the factors in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). Under this analysis, the Government submits for the following reasons that a term of incarceration at or below the bottom of the properly calculated Guidelines range, and a term of supervised release of three years, is fair under the circumstances.

### A. Nature and Circumstances: Transnational Gun Trafficking Is a Serious Crime that Puts Lives in Danger

A single straw purchase or illegal transfer of a firearm is "a callous and extreme risk to public safety." *United States v. Daniells*, No. 15-10150, 2017 WL 2256988, at *4 (D. Mass. May 23, 2017). The illegal transfer of a firearm is a callous and dangerous act because guns are inherently dangerous, and guns in the hands of people who shouldn't have them is even more

dangerous.  It is a callous and dangerous act because it skirts the regulatory framework in place to track and monitor the sale and re-sale of dangerous guns.  *See United States v. Arzu*, No. 5:07 CR 166, 2007 WL 2713908, at *3 (N.D. Ohio Sept. 17, 2007) (noting that "[t]he access to firearms through illegal channels is a problem for law enforcement of immense p[ro]portions," which, in part, justifies "a sentence at the highest level of the advisory Guidelines range").  And it is a callous and dangerous act because it entails a fundamental lack of care about what happens with the guns afterwards—or to the people they hurt or even kill.

The circumstances of this case are aggravated beyond even a run-of-the-mill straw purchase or illegal transfer.  First, there wasn't just one straw purchase or transfer of a gun to someone who shouldn't have it.  The defendant was involved in a conspiracy in which numerous guns were transferred to people who shouldn't have them.  Stated another way, the defendant's conduct significantly amplified the potential danger of an illegal firearms transfer.  *See United States v. Elsaddique*, 252 F. App'x 992, 993 (11th Cir. 2007) ("[The defendant] used a false name to purchase three firearms.  The act alone creates a significant danger to the public, which is only increased by the possibility that he made the purchase on someone else's behalf—someone who may have had a more serious and more recent criminal history.").

This case also involves the transnational bulk transfer of firearms, which takes it out of the rubric normally applied to a standard straw-purchase case.  In this instance, Canada has seen fit to regulate firearms much more stringently than America.  Fewer people have guns and fewer people can buy them.  When guns from America illegally flood into Canada, our country's issues with gun violence get passed onto a neighboring country that desperately does not want them—for all the reasons laid out above.  In the course of this case, the investigation further revealed that the mark-up for illegally purchased firearms can be significant in Canada—often more than five times,

and up to 25 times, the retail value of the guns in the States. This represents a lucrative, difficult-to-track black market that is now creating dangers for Canadian citizens and law enforcement. The authorities in Canada also made clear during the investigation that the illegal proliferation of guns into their country was an ever-growing problem that Canadian law enforcement was working furiously to stem. Ohio, in fact, has become a priority for them, as the authorities in Canada indicated that Ohio is the number one source state for firearms recovered in crimes in Canada.

The Government respectfully submits that a sentence at or below the bottom of the defendant's Guidelines range is appropriate given the serious nature of the conduct at issue.

### B. History and Characteristics: The Court Should Take into Account the Defendant's Lack of Criminal History

The Government submits that the defendant's minimal criminal history provides a justification for a sentence at or below the bottom of the Guidelines range. Not only is the defendant in a CH I, but he literally has no prior convictions or arrests.

### C. Unwarranted Sentencing Disparities: The Defendant's Involvement in the Conspiracy

This is a large transnational firearms-trafficking crime, with guns that ended up in the hands of serious criminals in Canada. This case involved 25-99 firearms. Fourteen defendants were charged; 13 have now pled. This defendant was an integral part of the conspiracy. As with all conspiracies, the success of the conspiracy is reliant on the conspiracy members doing their parts. As provided in the PSR, "Ahmed Ahmed participated in the firearms trafficking conspiracy by assisting female drivers coordinate the movement of vehicles used to traffic firearms; however, he did not exercise control over another participant, coordinate the trips, or establish the connections between the purchasers of the firearms in Canada. He took direction from others and did not receive a larger share of the fruits of the crime. He traveled to Canada on five occasions to assist

in the coordination and to execute the details of firearm-related loads into Canada.  Additionally, he assisted in transporting conspiracy-related proceeds back into the United States."  (PSR ¶ 51.)

Based on the above, the Government sees the defendants in this case falling into two tiers of culpability—an upper tier and a lower tier.  The Government views the defendant as falling at the middle of the lower tier.  The defendant's sentence should reflect the seriousness of the offense and the seriousness of the defendant's role in it.

### IV.    CONCLUSION

For the reasons provided above, the Government submits that a term of incarceration at or below the bottom of the properly calculated Guidelines range, and a term of supervised release of three years, would be sufficient but not greater than necessary to further the ends of sentencing.

Respectfully submitted,

VIPAL J. PATEL
Acting United States Attorney

*s/Kelly A. Norris*
KELLY A. NORRIS (0081254)
S. COURTER SHIMEALL (0090514)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
Office: (614) 469-5715
Fax: (614) 469-5653
E-mail: Kelly.Norris@usdoj.gov
E-mail: Courter.Shimeall@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Sentencing Memorandum of the United States was served this 25th day of August, 2021, electronically upon all counsel of record for Defendant Ahmed Ahmed, aka Seven.

*s/Kelly A. Norris*

KELLY A. NORRIS (0081254)
Assistant United States Attorney